# MAPLE STREET INVESTORS LLC
## PROMISSORY NOTE
### (CMB Infrastructure Investment Group X, LP)

| RATE OF INTEREST: | TERM: | DATE: |
|---|---|---|
| 6.0% | 6 Years | October __, 2013 |

**REGISTERED OWNER:** CMB Infrastructure Investment Group X, LP

**PRINCIPAL AMOUNT:** $36,000,000.00

    (All capitalized terms used, but not otherwise defined in this Promissory Note (this "**Note**") shall have the meanings ascribed to such terms in that certain Loan Agreement, dated as of May 7, 2012, as amended by that certain First Amendment to Loan Agreement, dated as of the date hereof (as so amended and as it may in the future be amended, supplemented or restated from time to time, the "**Loan Agreement**"), between MAPLE STREET INVESTORS LLC, an Ohio limited liability company ("**Borrower**") and CMB INFRASTRUCTURE INVESTMENT GROUP X, LP, an Illinois limited partnership ("**Lender**")).

    Borrower is an Ohio limited liability company, formed on April 30, 2012, as a Single Purpose Entity. Borrower is the holder of 90% of the membership interests in Maple Street Commerce LLC, an Ohio limited liability company ("**MSC LLC**"). Certain members of Borrower have executed and delivered a certain Membership Pledge and Security Agreement, dated as of the date hereof (the "**Pledge Agreement**"), granting to Lender a security interest in their respective membership interests in Borrower (the "**Collateral**") as security for the obligations of Borrower as incurred pursuant to the Loan Agreement. In addition, Stuart Lichter (who is one of the members of Borrower) has executed and delivered a certain Guaranty, dated as of the date hereof (the "**Guaranty**"), guarantying a portion of the obligations of Borrower as incurred pursuant to the Loan Agreement.

    MSC LLC holds fee title in certain real property (the "**Real Property**", see Exhibit B to the Loan Agreement), which consists of the project known as the former Hoover Plant located in North Canton, Ohio. The Real Property generally includes buildings formerly owned by the Hoover Company, comprising approximately 1,100,000 square feet of rentable improvements (including industrial, warehouse and office buildings, and residential and recreational improvements), portions of which shall be rehabilitated with the proceeds of the Loan (as hereinafter defined).

    Borrower hereby promises to pay to Lender the principal sum of Thirty-Six Million Dollars ($36,000,000.00) (the "**Loan**"), or so much thereof as has been advanced by Lender to Borrower pursuant to the Loan Agreement, plus interest as set forth in Section 1(b) of this Note, in accordance with and subject to the terms and provisions of the Loan Agreement. Reference is hereby made to the Loan Agreement for a more complete statement of the terms and conditions under which the Loan evidenced by this Note is made and is to be repaid. Subject to the terms of the Loan Agreement, this Note shall be paid in full on the Maturity Date, which is six (6) years after the Initial Funding Date, unless payment in full is made sooner pursuant to Section 2.2(b) of the Loan Agreement.



PLAINTIFF'S EXHIBIT D

Borrower agrees to pay the aforesaid principal plus interest in accordance with the terms hereinafter set forth:

1. This Note shall be payable as follows:

    (a) On the Maturity Date, Borrower shall pay, in lawful money of the United States of America, the outstanding principal balance of this Note to Lender at 7819 42nd Street West, Rock Island, IL 61201 or to such other address or to such account and in such manner as Lender shall direct. Except as provided in Section 2.2(b) of the Loan Agreement, Borrower may not prepay any of the outstanding principal balance of this Note at any time prior to the expiration of forty-two (42) months following the Initial Funding Date. Any prepayment of the outstanding principal balance of this Note shall be subject to the provisions of Section 2.2(b) of the Loan Agreement. Upon any prepayment of a portion of the outstanding principal balance of this Note, Lender shall concurrently release a portion of its interest in the Collateral in accordance with the process and formula set forth in Section 2.2(b)(iv) of the Loan Agreement.

    (b) The outstanding principal balance of the Loan shall bear interest at the rate of six percent (6.0%) per annum (the "**Fixed Rate**"), calculated from the date of disbursement of the applicable Tranche (as defined in the Loan Agreement) by Lender to Borrower, until repaid as set forth in this Agreement and the other Loan Documents (as defined in the Loan Agreement).

    (c) Interest on the Loan shall be computed on an actual-day basis of a year equal to 365/366 days, and shall be payable, in arrears, quarterly on each January 1, April 1, July 1, and October 1 following the Initial Funding Date (each such date, an "**Interest Payment Date**"), with the final interest payment being due and payable on the Maturity Date. Lender shall provide invoices for all payments as set forth in the Loan Agreement.

2. In lieu of the imposition of any late charges for payments not made by Borrower to Lender as of any Interest Payment Date ("**Delinquent Interest**") or the Maturity Date ("**Delinquent Principal**"), as applicable, a three percent (3%) per annum interest charge shall be added to the Fixed Rate (the "**Default Interest Rate**") and shall be applied for the number of days any payment remains unpaid as to (i) any interest payment not made on or before the ninth (9th) calendar day subsequent to each Interest Payment Date (i.e., January 10, April 10, July 10 and October 10), and (ii) as of the Maturity Date for the payment in whole of the outstanding principal balance of the Loan and the accrued and unpaid interest due and payable as of the Maturity Date. Each amount of Delinquent Interest and Delinquent Principal (collectively, a "**Delinquent Payment**") shall bear interest at the Default Interest Rate until such payment is made in full to Lender. Borrower and Lender agree that this Default Interest Rate represents a reasonable sum considering all of the circumstances existing on the date hereof and represents a fair and reasonable estimate of the costs that Lender will incur by reason of late payment. Borrower and Lender further agree that proof of actual damages would be costly and inconvenient. Acceptance of any payments of the Default Interest Rate shall not constitute a waiver of a default with respect to an overdue installment, and shall not prevent Lender from exercising any of the other rights available hereunder or under any other Loan Document. Such Default Interest Rate shall be paid without prejudice to any rights of Lender.

3. In the event Borrower fails to make two (2) consecutive interest payments to Lender or two (2) interest payments in any twelve-month period, Lender may accelerate payment of the amount of interest coming due on the next two (2) succeeding Interest Payment Dates after notice from Lender to Borrower, so that all such interest for the next two (2) Interest Payment Dates, together with all Delinquent Payments, shall be due and payable on (i) the tenth (10th) calendar day of the month following the month in which the second (2nd) interest payment was not made. Such amounts of interest that are

subject to acceleration shall only be payable on invoice from Lender delivered to Borrower at least ten (10) days prior to the due date thereof. Thereafter, Borrower shall continue to remit quarterly interest payments in accordance with this Note and the Loan Agreement.

4. This Note is secured by the Pledge Agreement, and the security interests created by the Pledge Agreement are perfected by one or more Uniform Commercial Code filings against the Collateral, providing a public record of lien. In addition, a portion of Borrower's obligations under this Note is guarantied by Stuart Lichten pursuant to the Guaranty.

5. This Note shall not be assigned by either party without the written permission of the other party, which permission shall not be unreasonably withheld.

6. Borrower covenants and warrants that the execution, delivery and performance of this Note have been duly authorized by all necessary actions of Borrower, do not require the consent or approval of any other person, regulatory authority or governmental body, and do not conflict with, result in a violation of, or constitute a default of: (a) any provision of any agreement or other instrument binding upon Borrower, or (b) any law, regulation, court decree or order applicable to Borrower.

7. This Note, when delivered, shall constitute a legal, valid and binding obligation of Borrower, enforceable in accordance with its terms, subject to bankruptcy, insolvency and other laws affecting creditors' rights generally and general principles of equity.

8. It is hereby recited, certified and declared that any and all acts, conditions and things required to exist, to happen and to be performed precedent to and in the issuance of this Note exist, have happened and have been performed in due time, form and manner as required by the Ohio Constitution and the laws of the State of Ohio.

9. This Note, the Loan Agreement, the Pledge Agreement, and the Guaranty constitute the entire understanding and agreement of the parties as to the matters set forth herein and therein. No alteration of or amendment to this Note shall be effective unless given in writing and signed by Lender and Borrower.

10. Payment of the principal amount of this Note may not be accelerated by Lender, unless otherwise provided herein or in the Loan Agreement.

11. This Note has been delivered to Lender and accepted by Lender in the State of Ohio. In the event of a lawsuit, Lender and Borrower agree to submit to the jurisdiction of the courts of Summit County, Ohio. This Note shall be governed by the laws of the State of Ohio as to the interpretation of any matter contained herein.

12. If a court of competent jurisdiction finds any provision of this Note invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; provided, however, in the event the offending provision cannot be so modified, it shall be stricken and all other provisions of this Note in all respects shall remain valid and enforceable.

13. Time shall be of the essence in the performance of this Note.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, Borrower has executed and delivered this Note as of the date first written above.

**Borrower**:

MAPLE STREET INVESTORS LLC,
an Ohio limited liability company

By: S.L. Properties, Inc.,
    a Delaware corporation,
    its Manager

By: _____
    Stuart Lichter, President

ADDRESS FOR NOTICE AND DELIVERY TO BORROWER:

c/o Industrial Realty Group
12214 Lakewood Boulevard
Downey, California 90242
Attn: Stuart Lichter
Tel: (562) 803-4761
Fax: (562) 803-4796

with a required copy to:

Fainsbert Mase Brown & Sussman, LLP
11835 West Olympic Blvd., Suite 1100
Los Angeles, California 90064
Attn: Dean Sussman, Esq.
Tel: (310) 473-6400
Fax: (310) 473-8702

4