Case: 5:16-cv-02717-SL Doc #: 2-13 Filed: 11/08/16 1 of 11. PageID #: 354

# GUARANTY

This GUARANTY (this "Guaranty") is dated as of October 16, 2013 and is made by Stuart Lichter, an individual ("Guarantor"), in favor of CMB Infrastructure Investment Group X, LP, an Illinois limited partnership ("Lender").

## RECITALS

A. Guarantor owns a fifty percent (50%) membership interest in Maple Street Investors LLC, an Ohio limited liability company ("Borrower").

B. Borrower and Lender have entered into that certain Loan Agreement, dated as of May 7, 2012, as amended by that certain First Amendment to Loan Agreement, dated as of the date hereof (as so amended and as it may in the future be amended, supplemented or restated from time to time, the "Loan Agreement"), pursuant to which Lender is making a loan (the "Loan") to Borrower in the total principal amount of up to $36,000,000.00.

C. Guarantor will derive a material and substantial benefit from the making of the Loan to Borrower, and has therefore agreed to provide this Guaranty on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor agrees, and is hereby bound for the benefit of Lender, as follows:

## SECTION 1
## DEFINITIONS

1.1 Loan Agreement Defined Terms. Unless the context hereof shall otherwise require, capitalized terms used in this Guaranty, including those in the recitals, and not otherwise defined herein shall have the respective meanings specified in the Loan Agreement (including those set forth in Section 1.1 of the Loan Agreement). The general interpretive provisions of Section 1.3 to the Loan Agreement shall apply to terms used in this Guaranty.

1.2 Definitions. "Guarantor Material Adverse Effect" shall mean an event that has a material adverse effect on the ability of Guarantor to perform his obligations under this Guaranty; provided, however, that notwithstanding the foregoing, in no event shall any of the following, alone or in combination, be deemed to constitute, nor shall any of the following be taken into account in determining whether there has been or shall be a Guarantor Material Adverse Effect: (i) any effect that results from events, circumstances or situations affecting general economic, business or regulatory conditions worldwide, or in North America or any national or global financial or capital market; (ii) any effect of any proposed or actual institution of any new interpretation of any existing applicable laws affecting the business of Guarantor or his affiliates; or (iii) acts of war (whether or not declared), the commencement, continuation or escalation of a war, acts of armed hostility, sabotage or terrorism or other international or national calamity or any material worsening of any such conditions threatened or existing as of the date hereof.

1


PLAINTIFF'S EXHIBIT I

## SECTION 2
## GUARANTY PROVISIONS

2.1 <u>Guaranty</u>. Subject to the limitations set forth in Section 2.7, Guarantor hereby unconditionally, absolutely and irrevocably guarantees, as primary obligor and not merely as a surety, the due, punctual and full payment (when and as the same may become due and payable) of the Obligations evidenced by the Note in accordance with, and subject to, the terms of the Loan Agreement (collectively, subject to the limitations set forth in Section 2.7, the "<u>Guaranteed Obligations</u>"). Guarantor acknowledges and agrees that this Guaranty constitutes a guaranty of payment when due and not of collection and waives any right to require that any resort be had by Lender against any other obligor, to any other security held for payment of the Guaranteed Obligations or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other Person, or against any other guarantor under any other guaranty covering the Guaranteed Obligations.

2.2 <u>Termination</u>. This Guaranty shall be released and terminated (a) automatically, without further action by any Person, if and when Borrower acquires the remaining 10% of the MSC LLC Membership Interest (i.e. above the 90% of the MSC LLC Membership Interest currently owned by Borrower), and furnishes Lender with reasonably satisfactory evidence of such acquisition, (b) automatically, on the date on which the Guaranteed Obligations are paid in full or extinguished, (c) if Borrower or Guarantor furnishes substitute collateral or security for the Loan, which substitute collateral or security is acceptable to Lender in its sole and reasonable discretion, or (d) when otherwise released or terminated by Lender in writing (the date of such release and termination being the "<u>Termination Date</u>"). Guarantor hereby acknowledges and agrees that this Guaranty constitutes a continuing guaranty and shall remain in full force until the Termination Date; <u>provided</u>, however, that with respect to any claim resulting from the acts of Guarantor or Borrower which occurred prior to the Termination Date:

(a) if such claim is made upon Lender at any time for repayment or recovery of any amounts or any property received by Lender from any source on account of any of the Guaranteed Obligations, and Lender is required to repay or return any amounts or property so received (including interest thereon to the extent Lender is required to repay the same), or

(b) if Lender becomes liable for any part of such claim (beyond any possible appeal) by reason of (1) any judgment or order of any court or administrative authority having competent jurisdiction, or (2) any settlement or compromise of any such claim, which settlement or compromise has been approved in writing by Guarantor,

then, subject to the limitations set forth in Section 2.7, Guarantor shall remain liable under this Guaranty for the amounts so repaid or property so returned or the amounts for which Lender becomes liable (such amounts being deemed part of the Guaranteed Obligations) to the same extent as if such amounts or property had never been received by Lender, notwithstanding any termination hereof or the cancellation of any instrument or agreement evidencing any of the Guaranteed Obligations. Not later than ten (10) days after receipt of notice from Lender, Guarantor shall pay to Lender an amount equal to the amount which Lender has repaid or returned as provided in this Section 2.2, subject to the limitations set forth in Section 2.7.

2

2.3     Guaranty Absolute.

(a)     The obligations of Guarantor contained herein (i) are direct, independent and primary obligations of Guarantor, (ii) are absolute, unconditional and continuing obligations and are not conditioned in any way upon the institution of suit or the taking of any other action or any attempt to enforce performance of or compliance with the Obligations of Borrower (other than providing notice to Borrower as set forth in the Loan Documents), (iii) shall remain in full force and effect and irrevocable without regard to the authority of Borrower to enter into any of the Loan Documents or any substitution, release or exchange of any other guaranty or any other security for any of the Guaranteed Obligations or any other circumstance whatsoever (other than upon the occurrence of the Termination Date or other termination of this Guaranty in accordance with the Loan Documents) that might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor, and (iv) except as set forth herein, are in no way conditioned or contingent upon any attempt to collect from Borrower or any other entity or to perfect or enforce any security or upon any other condition or contingency or upon any other action, occurrence or circumstance whatsoever.

(b)     Without limiting the generality of the foregoing, Guarantor shall have no right to terminate this Guaranty, or, except as expressly set forth herein, to be released, relieved or discharged from its obligations hereunder, and such obligations shall be neither affected nor diminished for any reason whatsoever (other than upon the occurrence of the Termination Date or other termination of this Guaranty in accordance with the Loan Documents), including (i) any amendment or supplement to or modification of any Loan Document, any extension or renewal of Borrower's obligations under any Loan Document, or any assignment or transfer of Borrower's interest in any Loan Document, (ii) any bankruptcy, insolvency, readjustment, composition, liquidation or similar proceeding with respect to Borrower, (iii) any furnishing or acceptance of additional security or any exchange, substitution, surrender or release of any security, (iv) any waiver, consent or other action or inaction or any exercise or non-exercise of any right, remedy or power with respect to the Guaranteed Obligations or any Loan Document, (v) any merger or consolidation of Borrower into or with any other Person, any change in the structure of Borrower, or any sale, lease or transfer of any or all of the assets of Borrower to any other Person, or (vi) any default, misrepresentation, negligence, misconduct or other action or inaction of any kind by Lender under or in connection with any Loan Document or any other agreement relating to this Guaranty, except to the extent that any such default, misrepresentation, negligence, misconduct or other action or inaction would constitute a defense to or limit Borrower's payment or performance of the Guaranteed Obligations.

(c)     Except as otherwise expressly set forth herein, Guarantor hereby unconditionally waives to the extent permitted by law promptness, diligence and notice as to the Guaranteed Obligations and acceptance of this Guaranty, and agrees that, except as otherwise provided herein and in the Loan Documents, Guarantor shall not be required to consent to or receive any notice of any amendment or modification of, or waiver, consent or extension with respect to, any Loan Document. The rights, powers and remedies herein provided are cumulative. No failure or delay on the part of Lender in

3

exercising any right, remedy, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise of any other right, remedy, power or privilege.

2.4     Guarantor's Waivers. Except as expressly required by the Loan Documents, Guarantor waives, to the fullest extent permitted by the provisions of applicable law, all of the following (including all defenses, counterclaims and other rights of any nature based upon any of the following):

(a)     presentment, demand for payment and protest of nonpayment of any of the Guaranteed Obligations, and notice of protest, dishonor or nonperformance;

(b)     notice of acceptance of this Guaranty and notice that credit has been extended in reliance on Guarantor's guaranty of the Guaranteed Obligations;

(c)     notice of any default or of any inability to enforce performance of the obligations of Borrower with respect to any Loan Document or notice of any acceleration of maturity of any Guaranteed Obligations;

(d)     demand for performance or observance of, and any enforcement of, any provision of any Loan Document or the Guaranteed Obligations, or any pursuit or exhaustion of rights or remedies against Borrower in respect of the Guaranteed Obligations or any requirement of diligence or promptness on the part of Lender in connection with any of the foregoing;

(e)     any "single action" or "anti-deficiency" law which would otherwise prevent Lender from bringing any action, including any claim for a deficiency, against Guarantor before or after Lender's commencement or completion of any foreclosure action, whether judicially, by exercise of power of sale or otherwise, or any other law which would otherwise require any election of remedies by Lender;

(f)     all demands and notices of every kind with respect to the foregoing;

(g)     any defense based upon any legal disability or other defense of Borrower;

(h)     any defense based upon any lack of authority of the officers, directors, partners or agents acting or purporting to act on behalf of Borrower; and

(i)     any defense based upon the application by Borrower of the proceeds of the Loan for purposes other than the purposes represented by Borrower to Lender.

Without limiting the generality of the foregoing or any other provision hereof, Guarantor further expressly subordinates to the Guaranteed Obligations, to the extent permitted by law, any and all rights and defenses, including without limitation any rights of subrogation, reimbursement, indemnification and contribution, which might otherwise be available to Guarantor under the law. Guarantor represents that he has obtained the advice of counsel as to

4

the extent to which suretyship and other defenses may be available to him with respect to his obligations hereunder in the absence of the waivers contained in this Section 2.4.

2.5 Loan Documents. Guarantor does hereby acknowledge that it has received and reviewed a copy of the Loan Agreement.

2.6 Payment. All payments to be made by Guarantor hereunder shall be made (a) within twenty (20) business days after receipt by Guarantor of written notice from Lender that reasonably identifies Borrower's breach of its obligations that constitute Guaranteed Obligations as provided herein, or (b) if later, when due and payable under the terms of the Loan Documents (subject to any applicable notice and grace periods under the Loan Documents). Such notice shall also include the amount of the Guaranteed Obligations for which Lender is seeking recourse against Guarantor which has not been paid as and when due and payable by Borrower (subject to any applicable notice and grace periods under the Loan Documents). All payments to be made by Guarantor hereunder shall be made in immediately available funds and in U.S. dollars to Lender as Lender may direct to Guarantor in writing.

2.7 Limitation of Liability. Notwithstanding anything to the contrary contained herein, (a) the total amount of the Guaranteed Obligations shall be limited to an amount equal to ten percent (10%) of the amount funded under the Loan, less amounts paid to Lender to reduce the amount due under the Note, and (b) Guarantor's liability hereunder and the Guaranteed Obligations shall not exceed Three Million Six Hundred Thousand and No/100 Dollars ($3,600,000.00) (the "Cap"). Nothing contained herein shall expand the obligations of Guarantor beyond those of Borrower as incurred under the Loan Documents, and in all events Guarantor's obligations hereunder shall be subject to the Cap.

## SECTION 3
## REPRESENTATIONS AND WARRANTIES

Guarantor hereby represents and warrants to Lender as of the date hereof that:

3.1 Organization; Requisite Power and Authority; Qualification. Guarantor is an individual with all requisite power and authority to own and operate his assets and has not had, and does not reasonably expect to have, a Guarantor Material Adverse Effect.

3.2 Due Authorization. Guarantor has obtained any and all necessary consents, including, if applicable, spousal consents as are necessary to enter into this Guaranty.

3.3 No Conflict. The execution, delivery and performance by Guarantor of this Guaranty and the transactions contemplated hereby do not and will not (i) conflict with, result in a breach of or constitute (with or without notice or lapse of time or both) a default under any Requirement of Law or Court Order binding upon Guarantor, (ii) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under any contractual obligation of Guarantor, the breach of which could reasonably be expected to have a Guarantor Material Adverse Effect, or (iii) result in or require the creation or imposition of any Lien whatsoever upon any assets of Guarantor (other than any Liens created under or permitted by any of the Loan Documents).

5

## SECTION 4
## REMEDIES; SUBROGATION

4.1 <u>Remedies</u>. In the event Guarantor shall fail to pay when due any amounts due under this Guaranty, or to comply with any other term of this Guaranty, Lender shall be entitled to all rights and remedies to which it may be entitled hereunder or at law, in equity or by statute, subject to the limitations set forth in Section 2.7.

4.2 <u>Subrogation</u>. Guarantor will not exercise any rights that he may acquire by way of subrogation under this Guaranty, by any payment made hereunder or otherwise, until all of the Guaranteed Obligations shall have been paid in full. If any amount shall be paid to Guarantor on account of such subrogation rights at any time when all of the Guaranteed Obligations shall not have been paid in full, such amount shall be held in trust for the benefit of Lender and shall forthwith be paid to Lender to be credited and applied to the Guaranteed Obligations, in accordance with the terms of the Loan Documents, when such Guaranteed Obligations are due and payable.

4.3 <u>Survival of Remedies and Subrogation Rights</u>. The provisions of this Section 4 shall survive the termination of this Guaranty and the payment in full of the Guaranteed Obligations and the termination of the Loan Agreement.

4.4 <u>Subordination</u>. Guarantor covenants and agrees that, after the occurrence and during the continuance of an Event of Default, all indebtedness, claims and liabilities then or thereafter owing by Borrower to Guarantor, whether arising under any Loan Document or otherwise, are subordinated to the prior payment in full of the Guaranteed Obligations and are so subordinated as a claim against Borrower or any of its assets, whether such claim be in the ordinary course of business or in the event of voluntary or involuntary liquidation, dissolution, insolvency or bankruptcy, so that no payment with respect to any such indebtedness, claim or liability will be made or received while any Event of Default exists. Notwithstanding the foregoing, to the extent Guarantor receives any such payment, such amount shall be held in trust for the benefit of Lender and shall forthwith be paid to Lender upon written request from Lender to be credited and applied against the Guaranteed Obligations then due and payable and reasonable expenses of collection, whether matured or unmatured, in accordance with the terms of the Loan Documents.

## SECTION 5
## MISCELLANEOUS

5.1 <u>Defenses</u>. Without limiting Guarantor's own defenses and rights hereunder, but subject to the conditions herein, Guarantor reserves to himself all rights, counterclaims and other defenses which Borrower is or may be entitled to arising from or out of any Loan Document, except for defenses arising out of the bankruptcy, insolvency, dissolution or liquidation of Borrower, the power or authority of Borrower to enter into the Loan Documents and to perform its Guaranteed Obligations thereunder, and the lack of enforceability of Borrower's Obligations under any Loan Document or any transaction thereunder; <u>provided</u> that, for the avoidance of doubt, Guarantor hereby waives, with respect to any claims asserted by Lender, any defenses he

6

may have against Borrower under the Loan Documents with respect to the Guaranteed Obligations.

5.2 Expenses. Guarantor agrees that in the event that Lender retains or engages an attorney or attorneys to enforce this Guaranty by reason of the failure of Guarantor to fulfill his obligations hereunder, then upon the successful enforcement of any such claim (beyond any applicable notice and cure period), promptly after request therefor, Guarantor will reimburse Lender for all reasonable out-of-pocket expenses incurred, including reasonable attorneys' fees, costs and disbursements.

5.3 Amendments and Waivers. No term, covenant, agreement or condition of this Guaranty may be terminated, amended or compliance therewith waived (either generally or in a particular instance, retroactively or prospectively) except by an instrument or instruments in writing executed by Guarantor and Lender.

5.4 Possession. Guarantor agrees and acknowledges that possession of this Guaranty by Lender shall be conclusive evidence of due execution and delivery of this Guaranty by Guarantor.

5.5 Notices. All notices, requests, consents and other communications required or permitted under this Guaranty shall be in writing and shall be (as elected by the Person giving such notice) (a) hand delivered by messenger or courier service, (b) delivered by express courier service (e.g., Federal Express), (c) telefaxed, or (d) mailed by registered or certified mail (postage prepaid), return receipt requested, addressed as follows:

If to Guarantor:

| | |
|---|---|
| Stuart Lichter<br>c/o Industrial Realty Group<br>12214 Lakewood Boulevard<br>Downey, California 90242<br>Attn: Stuart Lichter<br>Tel: (562) 803-4761<br>Fax: (562) 803-4796 | with a required copy to:<br><br>Fainsbert Mase Brown & Sussman, LLP<br>11835 West Olympic Blvd., Suite 1100<br>Los Angeles, California 90064<br>Attn: Dean Sussman, Esq.<br>Tel: (310) 473-6400<br>Fax: (310) 473-8702 |

If to Lender:

CMB Export Infrastructure Investment Group X, LP
c/o CMB Export LLC
7819 42nd Street West
Rock Island, Illinois 61201
Attn: Patrick F. Hogan, General Partner
Tel: (309) 797-1550
Fax: (855) 852-5733

7

or to such other address as any party may designate by notice complying with the terms of this Section 5.5. Each such notice shall be deemed delivered (i) on the date actually delivered if by messenger or courier service or express courier service; (ii) on the date of confirmed answerback if by telefax so long as a duplicate copy is sent immediately by methods (a), (b), or (d) above; and (iii) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed.

5.6 <u>Assignment and Assumption</u>. Except as permitted in the Loan Agreement, this Guaranty may not be assigned by Guarantor to, or assumed by, any successor to or assign of Guarantor without the prior written consent of Lender, which consent shall not be unreasonably withheld.

5.7 <u>Governing Law</u>. This Guaranty shall be governed by, and construed and enforced in accordance with the laws of the State of Illinois.

5.8 <u>Waiver of Trial by Jury</u>. TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR AND LENDER IRREVOCABLY WAIVE (A) TRIAL BY JURY IN ANY ACTION OR PROCEEDING WITH RESPECT TO THIS GUARANTY OR ANY LOAN DOCUMENT, AND (B) ANY OBJECTION (INCLUDING, WITHOUT LIMITATION, ANY OBJECTION OF THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS) WHICH ANY OF THEM MAY NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY SUCH ACTION OR PROCEEDING WITH RESPECT TO THIS GUARANTY OR ANY LOAN DOCUMENT IN ANY JURISDICTION.

5.9 <u>Severability</u>. If any provision of this Guaranty is contrary to, prohibited by or deemed invalid under applicable law or regulation, such provision shall be inapplicable and deemed omitted to the extent so contrary, prohibited or invalid, but the remainder hereof shall not be invalidated thereby and shall be given full force and effect so far as possible. If any provision of this Guaranty may be construed in two or more ways, one of which would render the provision invalid or otherwise voidable or unenforceable and another of which would render the provision valid and enforceable, such provision shall have the meaning which renders it valid and enforceable.

5.10 <u>Headings</u>. The headings contained in this Guaranty are for convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect in any way the meaning or interpretation of this Guaranty.

5.11 <u>Further Assurances</u>. Guarantor will promptly and duly execute and deliver such further documents to make such further assurances for and take such further action reasonably requested by Lender, all as may be reasonably necessary to carry out more effectively the intent and purpose of this Guaranty; <u>provided</u>, however, that Guarantor shall not be required to execute or enter into any such further assurance that increases Guarantor's obligations or decreases Guarantor's rights under this Guaranty.

5.12 <u>Effectiveness of Guaranty</u>. This Guaranty shall be effective as of the date hereof.

5.13 <u>Successors and Assigns</u>. This Guaranty shall be binding upon Guarantor and Lender (by acceptance hereof) and their respective successors and permitted assigns and shall

inure to the benefit of, and shall be enforceable by Lender and Guarantor and their respective successors and permitted assigns.

5.14 <u>Unsecured Obligation</u>. The obligations of Guarantor under this Guaranty are unsecured obligations of Guarantor. Without limiting the generality of the immediately preceding sentence, the obligations of Guarantor under this Guaranty are not secured by, and Guarantor shall not be deemed to have granted or otherwise conveyed to Lender, any security interest in, lien on or pledge of any properties or assets (or interests therein) of Guarantor.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be duly executed and delivered as of the date first written above.

Guarantor:

_____
STUART LICHTER

Acknowledged and Accepted by Lender:

CMB INFRASTRUCTURE INVESTMENT GROUP X, LP,
an Illinois limited partnership

By: _____
Name: Patrick F. Hogan
Title: General Partner

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be duly executed and delivered as of the date first written above.

**Guarantor:**

_____
STUART LICHTER

**Acknowledged and Accepted by Lender:**

**CMB INFRASTRUCTURE INVESTMENT GROUP X, LP,**
an Illinois limited partnership

By: _____
Name: Patrick F. Hogan
Title: General Partner